**Mary E. BROTHERS, M.D., Plaintiff/Appellee,**

v.

**Donald L. CUSTIS, in his official capacity as Administrator of the Veterans Administration, Washington, D.C.; D. Earl Brown, Jr., M.D., in his official capacity as Deputy Assistant Chief Medical Director for Professional Services of the Veterans Administration, Washington, D.C., Defendants,**

**K. Paul Poulose, M.D., individually, and in his official capacity as Chief of Staff, Veterans Administration Medical Center, Leavenworth, Kansas; Margaret C. Michelson, individually and in her official capacity as Medical Center Director, Veterans Administration Medical Center, Leavenworth, Kansas, Defendants/Appellants.**

No. 87–2890.

United States Court of Appeals, Tenth Circuit.

Oct. 4, 1989.

Jeffrica Jenkins Lee, Attorney, Appellate Staff, Civ. Div. (John R. Bolton, Asst. Atty. Gen., Benjamin L. Burgess, Jr., U.S. Atty., and Barbara L. Herwig, Attorney, Appellate Staff, Civ. Div., with her on the briefs), Dept. of Justice, Washington, D.C., for defendants/appellants.

David L. Ryan, Topeka, Kan. (Richard P. Senecal, Duncan, Senecal and Bednar, Chartered, Atchison, Kan., with him on the brief), for plaintiff/appellee.

Before SEYMOUR, ANDERSON, and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

During the period from May 19, 1980 to June 10, 1981, Mary E. Brothers, M.D., was employed as a temporary part-time surgical staff surgeon at the Veterans Administration Medical Center, Leavenworth, Kansas. She was denied a permanent staff position in 1981, allegedly in retaliation for her whistle-blowing activities in connection with certain practices and conditions at the medical center, and the medical center's handling of a drug trial known as the Anafranil Study. Subsequently, Dr. Brothers brought this *Bivens* action[1] against the defendants seeking damages for their alleged interference with the exercise of Dr. Brothers' rights under the First Amendment to the United States Constitution. A jury found in favor of Dr. Brothers, awarding her $90,937 in compensatory damages, and $100,000 in punitive damages, subsequently remitted to $10,000. The defendants/appellants have appealed.

The central question on appeal is whether a *Bivens* action was a remedy available to Dr. Brothers. We conclude that it was not, and that the judgment of the district court must be reversed.

In our recent decision in *Hill v. Dept. of Air Force*, 884 F.2d 1318 (10th Cir.1989) (per curiam), we analyzed the constraints placed upon the availability of *Bivens* actions, as follows:

"*Bivens* permits an action for damages against a federal agent who 'acting under color of his authority' engages in unconstitutional conduct. 403 U.S. at 389 [91 S.Ct. at 2001]. When there are 'special factors counselling hesitation in the absence of affirmative action by Congress,' *id.* at 396 [91 S.Ct. at 2005], or a congressional statement that money damages could not be recovered due to the availability of another equally effective remedy, *id.* at 397 [91 S.Ct. at 2005], courts should refuse to create damages remedies against federal agents. *Accord Bush v. Lucas*, 462 U.S. 367 [103 S.Ct. 2404, 76 L.Ed.2d 648] (1983). The Supreme Court has been cautious in extending *Bivens* into new contexts. *Schweiker v. Chilicky* [— U.S. —], 108 S.Ct. 2460, 2467 [101 L.Ed.2d 370] (1988).

"In *Bush v. Lucas*, 462 U.S. 367 [103 S.Ct. 2404], the Court held that because claims that a superior violated the federal employees' first amendment rights 'arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies,' it was inappropriate to provide a new judicial remedy be-

---

**1.** *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

yond the regulatory scheme. *Id.* at 368 [103 S.Ct. at 2406]. Likewise, in the most recent Supreme Court case on the subject, *Schweiker v. Chilicky* [—— U.S. ——], 108 S.Ct. 2460 [101 L.Ed.2d 370 1988], the Court declined to provide a damages remedy for Social Security disability claimants who alleged federal officials unconstitutionally terminated their benefits. The Court in *Chilicky* stated that '[w]hen the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.' *Id.* [108 S.Ct.] at 2468. 'The absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation.' *Id.* at 2467. The Court indicated that judicial deference must be given to indications that Congress' inaction was not inadvertent. *Id.* at 2468. Read together, *Chilicky* and *Bush* provide that 'courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has "not inadvertently" omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies.' *Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C.Cir.1988)."

Dr. Brothers argues that *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) is distinguishable on the grounds that Bush was an established government employee who was within the jurisdiction of the Merit Systems Protection Board, an agency which could grant him meaningful relief, and that such is not true in Dr. Brothers' case. Dr. Brothers does concede, however, that she had the right to petition the Office of the Special Counsel ("OSC") in connection with her claim that she was denied permanent employment in violation of her constitutional rights. Brief for the Appellee at pp. 24, 29, 32–34. In this connection she argues that recourse to the

OSC is "clearly no remedy," *id.* at 34, since "the OSC has no power of enforcement and can furnish no affirmative relief," *id.* at 33, and that recourse to the OSC would deny her a money damages remedy. We are unpersuaded by that reasoning.

The courts, including our court, are reading *Chilicky* broadly—that is, as cutting back significantly on the availability of *Bivens* actions. In *Kotarski v. Cooper*, 866 F.2d 311 (9th Cir.1989) (on remand from the Supreme Court for reconsideration in light of *Chilicky* ), the Ninth Circuit held that a probationary federal employee who was allegedly demoted in violation of his First Amendment rights had no *Bivens* action. The court stated:

"[P]robationary employees may submit a complaint to the Special Counsel of the [Merit Systems Protection] Board regarding 'prohibited personnel practices' which includes reprisals against 'whistle blowers'.... Because Congress provided *some* mechanism for appealing adverse personnel actions, it cannot be said that the failure to provide damages, or complete relief, was 'inadvertent.' "

*Id.* at 312 (emphasis added). In *McIntosh v. Turner*, 861 F.2d 524 (8th Cir.1988) (also on remand for reconsideration in light of *Chilicky* ), the Eighth Circuit similarly held that an employee who had access to the OSC disciplinary process could not pursue a *Bivens* action. The court stated:

"Congress consciously referred to violation of an employee's constitutional rights as one of the prohibited personnel practices for which the OSC disciplinary process was available.... It did not provide for a damages action for such a violation. In view of the explicit reference to constitutional rights in the legislative history, we cannot say that the omission of a damages remedy was inadvertent."

*Id.* at 526. And, in *Spagnola v. Mathis*, 859 F.2d 223 (D.C.Cir.1988) (per curiam) (en banc), the court held that employees who were not entitled to the full panoply of administrative remedies for adverse personnel actions, but who were instead limit-

ed to petitioning the OSC, had no right to pursue a *Bivens* claim. The court stated: "As we read *Chilicky* and *Bush* together, then, courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies." *Id.* at 228. *See also Karamanos v. Egger*, 882 F.2d 447 (9th Cir.1989); *Moreno v. Small Business Admin.*, 877 F.2d 715 (8th Cir.1989); *Hilst v. Bowen*, 874 F.2d 725 (10th Cir.1989) (per curiam); *Volk v. Hobson*, 866 F.2d 1398 (Fed.Cir.1989), *cert. denied*, —— U.S. ——, 109 S.Ct. 2435, 104 L.Ed.2d 991. We agree with our sister circuits, and hold that Dr. Brothers could not bring a *Bivens* action against the defendants/appellants in this case. Accordingly, the judgment of the district court is REVERSED.

